IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

WILLIAM JAMES STEELE,   :
           :
   Plaintiff,    :
           :
vs.          :  CIVIL ACTION 16-0456-KD-M
           :
MARY L. GILMORE, *et al.*,  :
           :
   Defendants.   :

## REPORT AND RECOMMENDATION

Plaintiff William James Steele, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983.  This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72(a)(2)(R), and is now before the undersigned on Defendants Mary L. Gilmore and Kenneth W.  Ellis' Motion for Summary Judgment (Docs. 28, 29, 35).  After careful review of the pleadings, and for the reasons set out below, it is recommended that Defendants' Motion for Summary Judgment be granted, and Plaintiff Steele's federal claims be dismissed with prejudice.

## I. Summary of Allegations.[1]

---

[1] The allegations presented are taken from Plaintiff's complaint and are viewed in the light most favorable to Plaintiff, the non-moving party.  *Johnson v. Booker T. Washington Broad Serv., Inc.*, 234 F.3d 501, 507 (11th Cir. 2000).

Plaintiff Steele alleges in his complaint that Defendants, Jail Administrator Mary L. Gilmore and Sheriff Kenneth W. Ellis, were deliberately indifferent to his medical needs while incarcerated at the Hale County Jail, in violation of the Eighth Amendment. (*Id.* at 6; Doc. 28-4 at 3).

Steele claims that upon being booked into Hale County Jail ("the Jail") on June 14, 2016, he notified the intake officer that he needed medical attention for several health issues, namely, medication and treatment for the Human Immunodeficiency Virus ("HIV") and hypertension, as well as foot and toe pain. (Doc. 8 at 3; Doc. 28-1 at 2). Steele was examined by Nurse Willett Carter, the Jail's nurse, on June 16, 2016, and informed her that he was without his needed HIV and hypertension medications and that he had an upcoming scheduled appointment at the 1917 (HIV) Clinic at the UAB School of Medicine in Birmingham, Alabama. (Doc. 8 at 3). Steele claims that Nurse Carter spoke with Defendant Gilmore, the Jail Administrator, several times regarding his medical needs, including the pain in his legs and toes and his scheduled appointment at the 1917 Clinic, but Defendant Gilmore refused to provide him medical treatment. (*Id.* at 3-4). Despite filing a sick call request for care, a grievance with the Jail, and a

complaint letter to Hale County District Court Judge Timothy A. Evans, Steele alleges Defendants continued to deny him medical treatment. (*Id.* at 3).

Plaintiff Steele brings this suit against Jail Administrator Gilmore and Sheriff Ellis for failure to provide him with adequate medical treatment while incarcerated at Hale County Jail. He seeks monetary relief for pain and suffering and the payment of subsequent medical bills. (Doc. 8 at 6). Defendants Gilmore and Ellis have answered the suit and filed a Special Report (Docs. 28, 29, 35), which the Court has converted to a Motion for Summary Judgment. (Doc. 30). Plaintiff Steele has responded to the Motion for Summary Judgment (Doc. 37),[2] and the undersigned finds that this motion is now ripe for consideration.

---

[2]  In his Response to the Motion for Summary Judgment, Steele indicates his desire for a court order to obtain "information" from named medical personnel but fails to identify what evidence he seeks to gain or how the discovery request is relevant to his claim. (Doc. 37 at 42). Steele also requests that Nurse Carter be ordered to tell "her side of the information…," specifically, how many times she attempted to speak with Jail Administrator Gilmore regarding obtaining HIV treatment for Steele. (*Id.* at 48). To the extent Steele's demands are to be considered requests for discovery, such requests are denied on the basis that the record already contains Nurse Carter's version of facts detailed in her "Nursing Notes" (*see* Doc. 28-4), and Plaintiff fails to establish the relevancy of his other requests for information. *See* Fed. R. Civ. P. 26(b)(1).

## II.  Standard of Review.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'").

The party seeking summary judgment has the initial responsibility of informing the court of the basis for the motion and of establishing, based upon the discovery instruments outlined in Rule 56(c), that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007) ("The moving party bears the initial burden of showing the court,

by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."). Once this initial demonstration is made, the "responsibility then devolves upon the non-movant to show the existence of a genuine issue . . . [of] material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993); *see also Allen*, *supra*, at 1314 ("'When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and show by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial.'") internal citations omitted); *see Comer v. City of Palm Bay, Fla.*, 265 F.3d 1186, 1192 (11th Cir. 2001) ("Once the moving party discharges its initial burden of showing that there is an absence of evidence to support the non-moving party's case, the non-moving party must specify facts proving the existence of a genuine issue of material fact for trial confirmed by affidavits, 'depositions, answers to interrogatories, and admissions on file.'") (internal quotations and citations omitted).

> Forbidding reliance upon pleadings precludes a party from "choos[ing] to wait until trial to develop claims or defenses relevant to the summary judgment motion." . . . This effectuates the purpose of summary judgment which "'is to pierce the pleadings and to assess the proof in

> order to see whether there is a genuine need for
> trial.'" . . . Thus, "mere general allegations
> which do not reveal detailed and precise facts"
> will not prevent the award of summary judgment
> upon a court's determination that no genuine
> issue for trial exists.

*Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592
(11th Cir.), *cert. denied sub nom*. *Jones v. Resolution
Trust Corp.*, 516 U.S. 817, 116 S. Ct. 74, 133 L.Ed.2d 33
(1995); *see also LaChance v. Duffy's Draft House, Inc.*, 146
F.3d 832, 835 (11th Cir. 1998) ("[The nonmoving party] must
raise 'significant probative evidence' that would be
sufficient for a jury to find for that party.").  In other
words, there is no genuine issue for trial "[w]here the
record taken as a whole could not lead a rational trier of
fact to find for the non-moving party[.]" *Matsushita Elec.
Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587,
106 S. Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see Comer*,
*supra*, 265 F.3d at 1192 ("Summary judgment is
required where the non-moving party's response to a motion
is merely 'a repetition of his conclusional allegations'
and is unsupported by evidence showing an issue for
trial.").

In considering whether Defendants are entitled to
summary judgment in this action, the undersigned has viewed
the facts in the light most favorable to Plaintiff Steele.

*Comer*, *supra*, 265 F.3d at 1192 ("We view the evidence and all factual inferences raised by it in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-moving party.").

> The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts. A genuine dispute requires more than "some metaphysical doubt as to the material facts." A "mere scintilla" of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment.

*Garczynski*, *supra*, 573 F.3d at 1165 (internal citations omitted). In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp.*, *supra*, 43 F.3d at 599.

**III. Discussion.**

   1.   Claims Not Barred by 42 U.S.C. § 1997e(a).

In their Motion for Summary Judgment, Defendants argue that Plaintiff Steele is barred from bringing this action due to his failure to exhaust administrative remedies as required by the Prisoner Litigation Reform Act ("PLRA"). The PLRA states that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility

> until such administrative remedies as are
> available are exhausted.

42 U.S.C. § 1997e(a). "Section 1997e(a) is intended to

force inmates to give authorities a chance to correct

constitutional violations and before resorting to federal

suit and to prevent patently frivolous lawsuits." *Horne v.*

*Nevil*, 2017 U.S. Dist. LEXIS 44613, *9 (S.C. Ga. March 7,

2017).  Exhaustion of all available administrative remedies

is a precondition to litigation and is mandatory. *See Ross*

*v. Blake*, __ U.S. __, 136 S. Ct. 1850, 1853, 195 L. Ed. 2d

117, 120 (2016) ("That mandatory language means a court may

not excuse a failure to exhaust, even to take "special

circumstances" into account.); *Woodford v. Ngo*, 548 U.S.

81, 85, 126 S. Ct. 2378, 165 L.Ed.2d 368 (2006)("Exhaustion

is no longer left to the discretion of the district court,

but is mandatory.").  The Supreme Court has noted that each

prison sets its own administrative remedies, *Jones v. Bock*,

599 U.S. 199, 218 (2007), and that "[p]roper exhaustion

demands compliance with an agency's deadlines and other

critical procedural rules because no adjudicative system

can function effectively without imposing some orderly

structure on the course of its proceedings." *Woodford,* 548

U.S. at 90-91.  Thus, prisoners must go beyond merely

filing a grievance and are required by the PLRA's

exhaustion requirement to "properly take each step within

the [prison's] administrative process," including appealing
denials of relief. *Johnson v. Meadows*, 418 F.3d 1152, 1157
(11th Cir. 2005).

> In order to determine whether Plaintiff
> fully exhausted his available administrative
> remedies, the Court thus first examines and
> consider [sic] both the Defendants' and the
> Plaintiff's version of the facts, taking the
> Plaintiff's version of the facts as true. *Turner
> v. Burnside*, 541 F.3d 1077, 1082 (11th Cir.
> 2008). "If in that light, the defendant is
> entitled to have the complaint dismissed for
> failure to exhaust administrative remedies, it
> must be dismissed." *Id*. If the complaint is not
> subject to dismissal at the first step, then the
> court shall proceed to make specific findings in
> order to resolve disputed factual issues related
> to exhaustion. *Id*. The defendants bear the burden
> of pleading and proving that the plaintiff has
> failed to exhaust available administrative
> remedies. *See Jones v. Bock*, 549 U.S. 199, 216,
> 127 S. Ct. 910, 166 L.Ed.2d 798 (2007).

*Shepard v. Fla. Dep't of Corr.*, 2017 U.S. Dist. LEXIS
53046, *24-25 (S.D. Fla. Apr. 5, 2017).

The Supreme Court has specified three "circumstances
in which an administrative remedy, although officially on
the books, is not capable of use to obtain relief." *Ross*,
136 S. Ct. at 1853. First, "an administrative procedure is
unavailable when (despite what regulations or guidance
materials may promise) it operates as a simple dead end –
with officers unable or consistently unwilling to provide
any relief to aggrieved inmates." *Id*. at 1859. "Next, an
administrative scheme might be so opaque that it becomes,

9

practically speaking, incapable of use." *Id.* Finally, a grievance process is rendered unavailable "when prison administrators thwart inmates from taking advantage of [it] through machination, misrepresentation, or intimidation." *Id.* at 1860. The law is also well settled that "the question of exhaustion under the PLRA [is] a 'threshold matter' that [the court must] address before considering the merits of the case. *Myles v. Miami-Dade Cnty. Corr. & Rehab. Dep't.,* 476 F. App'x 364, 366 (11th Cir. 2012)(quoting *Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004).

Defendants affirm that the Hale County Jail utilizes an inmate grievance procedure and outlines the procedure as set out below:

> The Hale County Jail has a grievance policy for inmates to express complaints. When an inmate has a grievance, he or she may request a Grievance Form from an officer. Inmates are instructed to write out their grievance on the form and return the form to any member of jail staff. The Grievance Forms are then delivered to the Jail Administrator who reviews all grievances and makes an appropriate response.
>
> Grievances of an emergency nature may be made orally and are handled immediately. No negative action will be taken against an inmate as a result of filing a grievance. The Jail Administrator ensures that a copy of the Grievance is placed in the inmate's file.
>
> . . .

> The **grievance policy is explained to inmates in the Hale County Jail Consent to Treatment form** that inmates sign before receiving medical care in the jail.

(Doc. 35-2 at 3)(emphasis added).  Defendants affirm that Steele failed to submit a grievance form concerning the allegations that are contained in this lawsuit and has, therefore, failed to follow the grievance procedure in place at the Hale County Jail.  (*Id.*; Doc. 28 at 11). Steele, on the other hand, asserts that he filed a grievance related to the facts of this lawsuit and was subsequently still denied medical treatment.  (Doc. 8 at 3).  Taking, as it must at this stage, Plaintiff's allegations to be true, the Court "proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008)(citing *Bryant v. Rich,* 530 F.3d 1368, 1373-74, 1376 (11th Cir. 2008)).

A review of the record reveals that on the Court's Prisoner Complaint Form for § 1983 Actions, Steele checked "Yes," that he presented his complaint through the prison's grievance procedure; however, the record is void of any actual grievance form submitted, complaint letter filed, or a personal conversation with Defendant Gilmore.  (Doc. 8 at 3; Doc. 28).  When asked to describe the steps he took to comply with the Jail's grievance procedure, Steele stated,

"The nurse and Mrs. Mary F. Long information." (Doc. 8 at 3). Reading this response in conjunction with Steele's pleadings, the undersigned recognizes that Steele considers the conversations Nurse Carter had with Jail Administrator Gilmore (regarding his HIV treatment and appointments) to represent or equate to the filing of a complaint. These third party conversations, however, fail to qualify as the filing of a grievance per the Hale County Jail's administrative remedy policy. Consequently, these facts show that Plaintiff has not exhausted his administrative remedies. Ordinarily such evidence would be sufficient to bar Plaintiff's suit pursuant to § 1997e(a), but Plaintiff raises the question, in his Response to the Motion for Summary Judgment, of the "availability" of the Jail's administrative procedure.

In his Response, Steele alleges, "no one at Hale County Jail [supplied] Mr. Steele with a book [] about grievance [sic] [or] explained anything" and asserts that Nurse Carter was in control of presenting all medical requests to Jail Administrator Gilmore. (Doc. 37 at 30). In support of this motion, Defendants have submitted the "Hale County Jail Consent to Treatment" form provided to Steele's while incarcerated at the Jail, which contains the grievance procedure of the Jail. (Doc, 28-1 at 11). The

12

form presented to the Court bears Steele's name and date of booking and a witness' signature; however, the form is void of Steele's signature. (*Id.*). Given that Defendants affirm that this "Consent to Treatment" form is the means by which inmates are informed of the administrative remedies available to them, and Defendants have not provided sufficient support that Steele did in fact receive the intake form, the undersigned finds Defendants have failed to carry their burden of showing the grievance policy was known to Steele and, therefore, properly "available" to Steele.  *Turner*, 541 F.3d at 1083 (Defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies.); *see also Jones v. Bock,* 549 U.S. 199, 216, 127 S. Ct. 910, 921, 166 L. Ed. 2d 798 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); *Dixon v. United States,* 548 U.S. 1, 8, 126 S. Ct. 2437, 2443, 165 L. Ed. 2d 299 (2006) (stating that, as a "general evidentiary rule," the burdens of production and persuasion are given to the same party).  As such, the undersigned finds Steele is not barred by § 1997e(a) for failing to exhaust his administrative

remedies.

2.   Claims Not Barred by 42 U.S.C. § 1997e(e).

Section 1997e(e) prohibits an inmate's recovery of monetary relief for mental or emotional injury without the showing of a physical injury that is greater than *de minimis*.  42 U.S.C. § 1997e(e).  Defendants assert that Steele has failed to allege any physical injury greater than *de minimus*.  (Doc. 28 at 11-12).  The undersigned, however, disagrees.  Throughout Steele's pleadings, he repeatedly claims that due to Defendants' failure to provide medical care, he suffered blood clots in both legs and toe damage that required performance of a surgical procedure.  The Court finds that such injuries, if due to Defendants' deliberate indifference, are greater than *de minimus* and would not be barred by § 1997e(e).

3.   Immunity Defenses.

To the extent Plaintiff is proceeding against Defendants in their official capacities, those claims fail. The Eleventh Amendment, which specifically prohibits suits against "the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State," has long been held to apply "equally to suits against a state brought in federal court by citizens of that state." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th

Cir. 1998).  "The state need not be formally named as a defendant for the amendment to apply; state officials sued in their official capacity are also protected by the amendment." *Id.* (citing *Kentucky v. Graham*, 473 U.S. 159, 166-67, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)). "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989).

It is well settled in this circuit that suits seeking monetary relief against state correctional officers in their official capacities are generally barred by the Eleventh Amendment. *See Taylor v. Adams*, 221 F.3d 1254, 1256 (11th Cir. 2000) (Those operating "jails are state officers protected by Eleventh Amendment immunity."); *Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1429 (11th Cir. 1997) ("[J]ailers are state officials for the purpose of Eleventh Amendment immunity."); *Dean v. Barber*, 951 F.2d 1210, 1215 n.5 (11th Cir.1992) ("Sheriff's departments and police departments are not usually considered legal entities subject to suit."); *Free v. Granger*, 887 F.2d

1552, 1557 (11th Cir. 1989) ("[A] sheriff is an executive

officer of the state.").

> Official capacity lawsuits are "in all respects
> other than name, . . . treated as a suit against
> the entity." *Kentucky v. Graham*, 473 U.S. 159,
> 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). "A
> state official may not be sued in his official
> capacity unless the state has waived its Eleventh
> Amendment immunity, *see Pennhurst State Sch. &
> Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S. Ct.
> 900, 79 L. Ed. 2d 67 (1984), or Congress has
> abrogated the state's immunity, *see Seminole
> Tribe v. Florida*, 517 U.S. 44, 59, 116 S. Ct.
> 1114, 134 L. Ed. 2d 252 (1996). Alabama has not
> waived its Eleventh Amendment immunity, *see Carr
> v. City of Florence*, 916 F.2d 1521, 1525 (11th
> Cir. 1990) (citations omitted), and Congress has
> not abrogated Alabama's immunity. Therefore,
> Alabama state officials are immune from claims
> brought against them in their official
> capacities." *Lancaster v. Monroe Cnty.*, 116 F.3d
> 1419, 1429 (11th Cir. 1997); *Powell v. Barrett*,
> 496 F.3d 1288, 1304, 1308 (11th Cir. 2007) (state
> defendants sued in their official capacity for
> monetary damages are immune from suit under the
> Eleventh Amendment).

*Johnson v. Folks*, 2014 U.S. Dist. LEXIS 16027, 7-9 (S.D.

Ala. Jan. 17, 2014) (quoting *Johnson v. Keaton*, No. 2:05-

CV-1238-WKW, 2008 U.S. Dist. LEXIS 75356, 2008 WL 4493242,

at *6 (M.D. Ala. Sept. 29, 2008)).

It is clear from the pleadings that Defendants were

state officials at the time the action arose and are

entitled to sovereign immunity under the Eleventh Amendment

for claims seeking monetary damages from them in their

official capacities. Therefore, Defendants are entitled to

absolute immunity from Plaintiff's claims asserted against them in their official capacities.

Additionally, Defendants have asserted the defense of qualified immunity. (*See* Docs. 28, 29). Qualified immunity protects government actors from liability, when performing discretionary functions, to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). The Supreme Court has established a two-prong test for evaluating a claim of qualified immunity: (1) whether a constitutional right has been violated based on the facts alleged; and (2) whether the right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). The Court may exercise its sound discretion in deciding which of the two prongs should be addressed first based on the circumstances of the case at hand. *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (The Court held that *Saucier's* two-step analysis, while often appropriate, was not mandatory).

In this action, as discussed below, the Court finds Steele has failed to establish that Defendants violated his Eighth Amendment rights; therefore, "there is no necessity

for further inquiries concerning qualified immunity."
*Harrison v. Culliver*, 746 F.3d 1288, 1300, n.15 (11th Cir.
2014) (quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.
Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001)); *Losey v.
Thompson*, 596 F. App'x. 783, 789-790 (11th Cir. 2015)
("Because . . . [plaintiff's] Eighth Amendment claim of
deliberate indifference fails, [defendant] has no need of
qualified immunity, so we do not separately address it.").

    4.   Denial of Medical Care.

    Plaintiff Steele brings his federal claim of
inadequate medical care pursuant to the Eighth Amendment.
"The Eighth Amendment's proscription of cruel and unusual
punishments prohibits prison officials from exhibiting
deliberate indifference to prisoners' serious medical
needs." *Campbell v. Sikes*, 169 F.3d 1353, 1363 (11th Cir.
1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976));
*see also Robinson v. California*, 370 U.S. 660, 82 S. Ct.
1417, 8 L. Ed. 2d 758 (1972) (Eighth Amendment is
applicable to the states through the Fourteenth Amendment).

    In order to prevail on his Eighth Amendment claim,
Steele must make both an objective and a subjective
showing.  In *Sims v. Mashburn*, 25 F.3d 980 (11th Cir.
1994), the Court delineated the objective and subjective
portions of an Eighth Amendment claim as follows:

> An Eighth Amendment claim is said to have two
> components, an objective component, which
> inquires whether the alleged wrongdoing was
> objectively harmful enough to establish a
> constitutional violation, and a subjective
> component, which inquires whether the officials
> acted with a sufficiently culpable state of mind.

25 F.3d at 983.  Thus, Steele must prove that there was "a

substantial risk of serious harm," that Defendants were

subjectively deliberately indifferent to that risk, and

causation.  *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582

(11th Cir. 1995); *see also Farmer v. Brennan*, 511 U.S. 825,

832-34, 114 S. Ct. 1970, 128 L.Ed. 2d 811 (1994).

The objective component of an Eighth Amendment claim

for inadequate health care requires that Steele demonstrate

the existence of an "objectively serious medical need."

*Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).

Obviously, HIV is a serious medical condition, as it can be

life-threatening if not properly treated.  *See Brown v.

Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004).  Though, it

is arguable based on the information before the Court at

this time whether or not "leg and foot pain" is considered

an objectively serious medical need.  For the sake of this

motion, however, the Court will consider Plaintiff's health

issues and medical needs as objectively serious conditions.

Thus, the Court will focus primarily on the subjective

component of Steele's Eighth Amendment claim, which

generally "inquires whether the officials acted with a sufficiently culpable state of mind." *Sims*, 25 F.3d at 983-84 (citing *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992)).  Or stated another way, whether Defendants acted with deliberate indifference to a risk in order to implicate the Eighth Amendment.

In defining "deliberate indifference," the Supreme Court in *Farmer* stated:

> With deliberate indifference lying somewhere between the poles of negligence at one end and purpose or knowledge at the other, the Courts of Appeals have routinely equated deliberate indifference with recklessness. *See e.g., LaMarca v. Turner*, 995 F.2d 1526, 1535 (CA11 1993)…. It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.

*Farmer*, 511 U.S. at 836.  Consequently, there is no liability for "an official's failure to alleviate a significant risk that he should have perceived but did not . . . ." *Id.* at 838.  It is not enough that an inmate proves that the defendant should have known of the risk, but did not, as actual knowledge is the key.  *See, e.g., Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996).  Accordingly, the undersigned must determine whether Plaintiff Steele has sufficiently alleged that each defendant seeking summary judgment was deliberately indifferent to a serious need.

20

As to the claims against Jail Administrator Mary L. Gilmore, the record indicates that she had knowledge of Steele's HIV status (and possibly his hypertension diagnosis and foot and toe pain). However, Defendant Gilmore denies that she was deliberately indifferent to Steel's medical needs and asserts that Steele received adequate medical care while incarcerated at Hale County Jail. In support of summary judgment, Defendant Gilmore submits Steele's medical record, including Nurse Carter's Medical Notes, which are summarized below:

On June 16, 2016, two days after being booked into the Jail, Steele was examined in the medical unit and was observed as being alert, oriented, with a blood pressure of 140/88, and with "slight edema" in his feet. (Doc. 28-4 at 2, 3). Steele communicated to Nurse Carter that he needed his HIV and hypertension medications, and he was advised that, if his family could bring in his needed medication, the Jail could start administering it. (*Id.* at 2). Steele also informed Nurse Carter that he had an upcoming scheduled appointment at the 1917 Clinic regarding his HIV treatment but could not remember the day or time. (*Id.*). Nurse Carter confirmed the appointment as being scheduled for June 23, 2016 at 10:00 a.m. (*Id.* at 3). Nurse Carter also noted that the appointment was considered an "initial

appointment to reestablish care for HIV," as Steele had not been seen in the 1917 Clinic in three or four years.[3] (*Id.*).

On June 22, 2016, Nurse Carter first informed Defendant Gilmore of Steele's appointment at the 1917 Clinic to initiate HIV treatment, and Defendant Gilmore maintained the Jail would be unable to transport Steele to Birmingham, Alabama, the following morning. (*Id.*). Nurse Carter then rescheduled the appointment for June 29, 2016 at 2:00 p.m. (*Id.*).

On June 24, 2016, Steele was again seen by Nurse Carter for complaints of foot pain. (*Id.*). No increased swelling or discoloration was observed in Steele's feet, but Ibuprofen was prescribed to Steele for the pain since his home medications had yet to be brought to the Jail. (*Id.*).

On June 27, 2016, Steele submitted a sick call request complaining of worsening pain in his right leg that was enabling him from sleeping; he also requested a court order to obtain medical treatment. (*Id.* at 14). Nurse Carter

---

[3]     According to the record, Plaintiff Steele was diagnosed as being HIV positive in 2005, but had not received treatment at the 1917 Clinic in approximately 4 years. (Doc. 28-4 at 3). It appears, however, that this lack of treatment was not necessarily by choice, as Steele informed Nurse Carter that he was released from prison in March of 2016 after serving five years and eight months and was rearrested and incarcerated at Hale County Jail in June of 2016. (*Id.*).

examined Steele that same day and observed no acute swelling of his feet and no breathing difficulties but again prescribed Ibuprofen for his complaints of pain since Steele remained without his personal supply of prescription medications. (*Id.*). Also on June 27, 2016, Nurse Carter spoke with Defendant Gilmore about Steele's rescheduled appointment on June 29 at the 1917 Clinic, and Defendant Gilmore instructed Nurse Carter to cancel the appointment and recommended contacting Selma AIDS Information and Referral ("Selma AIR") to initiate HIV treatment instead. (*Id.*).

On June 28, 2016, the record confirms Nurse Carter contacted Selma AIR to establish HIV care, and Steele was seen by Selma AIR that same day at the Jail. (*Id.* at 4-5). Selma AIR determined additional tests and lab workups would be required prior to initiating treatment and such tests were scheduled. (*Id.* at 5).

On July 1, 2016, after Steele was unable to obtain medications from home, unable to keep his UAB 1917 Clinic appointment, and unable to begin HIV treatment with Selma AIR until diagnosis was confirmed, Steele was transported to Hale County Hospital Clinic to obtain medical treatment. (Doc. 28-2 at 15). At the hospital, Steele was examined by a physician and prescribed Gabapentin, Aspirin, Cephalexin,

and Lisinopril; all medications were filled at a local pharmacy and were administered by the Jail throughout the remainder of Steele's incarceration.  (Doc. 28-1 at 6, Doc. 28-2 at 15; Doc. 28-4 at 8).

On July 11, 2016, Steele was transported to the Selma AIR Clinic to receive HIV testing[4] and a follow up appointment to discuss the results was scheduled for July 19, 2016.  (Doc. 28-2 at 6-7, 13).  However, Steele was transferred from Hale County Jail to Limestone Correctional Facility on July 3, 2016, prior to initiating HIV treatment with Selma AIR.  (*Id.* at 14).

The record, as discussed above, belies Steele's claim that he was denied medical treatment and, instead, evidences that during his approximate one-month incarceration he received medical care on at least six different occasions, including examinations by Nurse Carter as well as a physician at the local hospital and consultations/evaluations for customizing a HIV treatment plan by Selma AIR.  "When a prison inmate has received medical care, courts hesitate to find an Eighth Amendment

---

[4]    The record suggests that there was a scheduling mix up between the Jail and Selma AIR.  On July 11, 2016, Sergeant Rainer transported Steele to the Selma AIR Clinic for HIV testing, while the Selma AIR representative traveled to the Jail to examine Steele.  (Doc. 28-2 at 13).  Ultimately, the Selma AIR representative waited for Steele to return to the Jail and the HIV testing was conducted at the Jail.  (*Id.*).

violation." *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989); *see also  Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991)(For medical treatment to rise to the level of a constitutional violation, the care must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.").  Additionally, there is no evidence in the medical record, and Plaintiff Steele presents none, that he was ever at serious risk of harm due to his lack of medications or lower extremity pain.  Notably, during the time period in question, Nurse Carter did not observe any worsening of the swelling in Steele's foot or visible HIV related symptoms, nor did the hospital physician find it necessary to hospitalize Steele or provide medical treatment beyond the noted medications prescribed.  As such, it cannot be said that Steele was ever at any substantial risk of serious harm or that Defendant Gilmore was made aware of any such risk.

Moreover, Defendant Gilmore's decision to deny Steele transport to the 1917 Clinic fails to support a constitutional claim.  The evidence reveals that once the 1917 Clinic appointment was cancelled, Defendant Gilmore suggested an alternative, local HIV clinic be contacted for treatment options, and Steele was immediately seen by the

local clinic.  The evidence suggests that Steele was able
to receive the same initial screening and treatment through
Selma AIR that he would have by "reestablishing" care at
the 1917 Clinic.  *See Harris v. Thigpen*, 941 F.2d 1495,
1504-05 (11th Cir. 1991)(As long as the medical treatment
provided is "minimally adequate," a prisoner's preference
for a different treatment does not give rise to a
constitutional claim.); *Hamm v. DeKalb Cnty.,* 774 F.2d
1567, 1575 (11th Cir. 1985) (evidence showed prisoner
received significant medical care in jail and although he
may have desired different treatment "the care the jail
provided did not amount to deliberate indifference"), *cert.
denied*, 475 U.S. 1096, 106 S. Ct. 1492, 89 L. Ed. 2d 894
(1986).  Consequently, the record lacks any evidence that
Defendant Gilmore knowingly disregarded any serious and
substantial risk to Steele's health.

To the extent that Steele attempts to assert a claim
for delay in the receipt of medical care, the undersigned
finds Plaintiff has failed to carry his burden of proving
the delay caused his complaints.  A "[d]elay in access to
medical attention can violate the Eighth Amendment . . .
when it is tantamount to unnecessary and wanton infliction
of pain." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d
1176, 1187 (11th Cir. 1994), *overruled in part on other*

*grounds by Hope v. Pelzer*, 536 U.S. 730, 739 n. 9, 122 S.
Ct. 2508, 153 L. Ed. 2d 666 (2002) (internal citations and
quotation marks omitted).  However, to succeed in proving
that the delay of medical care rose to a constitutional
violation, Steele "must place verifying medical evidence in
the record to establish the detrimental effect of delay in
medical treatment to succeed. . . . Consequently, delay in
medical treatment must be interpreted in the context of the
seriousness of the medical need, deciding whether the delay
worsened the medical condition, and considering the reason
for delay.  *Id*. at 1188-89 (internal citations omitted)
(footnotes omitted); *see also, Mann v. Taser Int'l, Inc.*,
588 F.3d 1291, 1307 (11th Cir. 2009).

First, the record before the Court shows no delay in
medical care with the exception of establishing HIV
treatment.  According to Nurse Carter's notes, Steele was
scheduled to be examined in the 1917 Clinic on June 23,
2016 but was not seen by Selma AIR until June 28, 2016.
And, Plaintiff fails to link this five-day delay in
initiating HIV treatment to any actual damage or worsening
of his condition.  Instead, Steele makes the blanket
assertion that as a result of the inadequate medical care
received at Hale County Jail, blood clots have formed in
both of his legs and, on May 31, 2017, he had to undergo

surgery to repair "a big knot at the top [of] his right foot." (Doc. 33 at 1; Doc. 37 at 47). The record does evidence that on May 31, 2017, Steele underwent a peripherial angiogram to detect possible narrowed or blocked arteries that supply blood to the legs. (Doc. 37 at 23). There are, however, no further details of the procedure or Plaintiff's current condition. Specifically, Steele fails to report the findings of the surgical procedure and fails to present any verifying medical evidence from any doctor that the complained of delay, which occurred *nearly a year prior* to the surgical procedure, worsened or exacerbated his condition, caused the blood clots to develop, or necessitated the surgical procedure. Consequently, the record lacks "verifying medical evidence" of a detrimental delay.

For the reasons discussed above, the undersigned recommends the granting of summary judgment for Defendant Gilmore. As to the claims against Sheriff Kenneth W. Ellis, the undersigned also recommends the granting of summary judgment.

Although Steele names Sheriff Ellis as a defendant, he makes no allegations against him, nor is there any indication he was personally involved in Steele's medical care. To the extent Sheriff Ellis is named as a defendant

based solely on his supervisory position, such a claim is
rooted in the theory of *respondeat superior* and is not
cognizable in a § 1983 action. *Edwards v. Ala. Dep't of
Corrs.*, 81 F. Supp. 2d 1242, 1255 (M.D. Ala. 2000) ("A
theory of *respondeat superior* is not sufficient to support
[a] § 1983 claim. . . ."); *see also Duff v. Steubb*, 378 F.
App'x 868 (11th Cir. 2010) ("Deliberate indifference can be
based on the defendant's personal participation in the
allegedly unconstitutional conduct or on the defendant's
actions as a supervisor.").

> "It is well established in this Circuit that
> supervisory officials are not liable under § 1983
> for the unconstitutional acts of their
> subordinates on the basis of *respondeat superior*
> or vicarious liability." *Hartley v. Parnell*, 193
> F.3d 1263, 1269 (11th Cir. 1999) (internal
> quotation marks and citation omitted); *Gonzalez*,
> 325 F.3d at 1234, 2003 WL 1481583, at *4
> (concluding supervisory officials are not liable
> on the basis of *respondeat superior* or vicarious
> liability). Instead, supervisory liability under
> § 1983 occurs either when the supervisor
> personally participates in the alleged
> unconstitutional conduct or when there is a
> causal connection between the actions of a
> supervising official and the alleged
> constitutional deprivation. *Gonzalez*, 325 F.3d
> at 1235, 2003 WL 1481583, at *5; *Brown v.
> Crawford*, 906 F.2d 667, 671 (11th Cir. 1990).
> The necessary causal connection can be
> established "when a history of widespread abuse
> puts the responsible supervisor on notice of the
> need to correct the alleged deprivation, and he
> fails to do so." *Gonzalez*, 325 F.3d at 1234, 2003
> WL 1481583, at *5 (quoting B*raddy v. Fla. Dept.
> of Labor & Emp't,* 133 F.3d 797, 802 (11th
> Cir.1998)); *Brown*, 906 F.2d at 671.
> Alternatively, the causal connection may be

> established when a supervisor's "'custom or
> policy ... result[s] in deliberate indifference
> to constitutional rights'" or when facts support
> "an inference that the supervisor directed the
> subordinates to act unlawfully or knew that the
> subordinates would act unlawfully and failed to
> stop them from doing so." *Gonzalez*, 325 F.3d
> at    , 2003 WL 1481583, at *5 (quoting *Rivas v.
> Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991));
> *Hartley*, 193 F.3d at 1263; *see also Post v. City
> of Ft. Lauderdale,* 7 F.3d 1552, 1560-61 (11th
> Cir. 1993). "The standard by which a supervisor
> is held liable in [his] individual capacity for
> the actions of a subordinate is extremely
> rigorous." *Gonzalez*, 325 F.3d at 1234, 2003 WL
> 1481583, at *4 (internal quotation marks and
> citation omitted).

*Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). In

instances where supervisory liability is based on a

supervisor's custom or policy, a plaintiff must show that

the custom or policy was "the 'moving force [behind] the

constitutional violation.'" *Pinkney v. Davis*, 952 F. Supp.

1561, 1569 (M.D. Ala. 1997) (citations omitted). "[I]t is

clear that not only must there be some degree of 'fault' on

the part of [defendant] in establishing the policy or

tolerating the custom, but there must be a causal link

between the custom or policy and the constitutional

deprivation." *Id*. (citations omitted).

Steele has posited no allegations or facts connecting

Sheriff Ellis to an unconstitutional policy or custom

regarding the administration of medical care or withholding

HIV care from inmates. Absent some allegation that Sheriff

Ellis knew of, sanctioned, participated in, or was otherwise "affirmatively linked" to the actions about which Plaintiff complains, he may not be held liable. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior* . . . [A] plaintiff must plead that each Government-official defendant, through the official's own actions, has violated the Constitution . . .). Thus, the undersigned determines that Steele has failed establish a valid Eighth Amendment claim and summary judgment should be granted in favor of Sheriff Ellis.

**IV. Conclusion.**

Based on the foregoing, it is recommended that Defendants' Motion for Summary Judgment be **granted,** that Plaintiff Steele's action against Defendants Gilmore and Ellis be **dismissed** with prejudice.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

31

## <u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. L.R. 72(c).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely

incorporates by reference or refers to the briefing before

the Magistrate Judge is not specific.

DONE this 11th day of July, 2017.


                         s/BERT W. MILLING, JR.
                         UNITED STATES MAGISTRATE JUDGE